# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| RANDY E.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>    Defendant. [2] | Case No. 5:25-cv-00940-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Randy E. appeals the ALJ's decision denying his claim for disability insurance benefits. For the reasons set forth below, the ALJ's denial of benefits is reversed, and this case is remanded.

## I.    BACKGROUND

Plaintiff applied for Social Security disability insurance benefits in April 2021, alleging disability beginning June 1, 2017. See Dkt. 11, Administrative

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano is the Commissioner of Social Security. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Leland Dudek as Defendant in this action.

Record ("AR") 207-10.[3] Plaintiff's claims were denied initially and upon reconsideration. See AR 109-24. Upon request, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on September 15, 2022. See AR 38-63, 130. The ALJ issued an unfavorable decision on November 2, 2022. See AR 14-26. After the Appeals Council denied review, Plaintiff sought review in this Court, and the parties stipulated to a remand. See AR 8-12, 826-38.

On April 1, 2024, the Appeals Council issued an order remanding the case to an ALJ for further proceedings to include a reevaluation of the nature and severity of Plaintiff's hernia impairment, a reevaluation of Plaintiff's residual functional capacity ("RFC"), and a reevaluation of Plaintiff's subjective complaints. See AR 851-54. On remand, Plaintiff received a second hearing before a different ALJ on January 15, 2025.[4] See AR 777-798. The ALJ issued an unfavorable decision on January 31, 2025. See AR 751-76.

In the decision, the ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of June 1, 2017, through his date last insured of December 31, 2020. See AR 757. At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease (DDD) of the cervical, thoracic, and lumbar spine, hypertension, congestive heart failure status post STEMI with stent placement, hernia, chronic pain syndrome, and obesity." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that

---

[3] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

[4] The transcript lists the hearing date as January 15, 2024. See AR 777-98. Given the date of the Appeals Council's order and the parties' reference to a January 15, 2025 hearing, the Court assumes a January 15, 2025 hearing.

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 760-61.

The ALJ determined that Plaintiff had the RFC to perform "light work as defined in 20 CFR [§] 404.1567(b) except the claimant can frequently push and/or pull with the left lower extremity; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can never ladders [sic], ropes, or scaffolds; and he can have occasional exposure to odors, fumes, dust, gases, and pulmonary irritants and hazards, but no exposure to unprotected heights or dangerous moving machinery." AR 761.

At step four, the ALJ found that Plaintiff had no past relevant work. See AR 766. Based on the testimony of a vocational expert, the ALJ found that Plaintiff could have performed jobs that existed in significant numbers in the national economy such as marker, routing clerk, and ticket seller. See AR 766-67. Accordingly, the ALJ concluded that Plaintiff was not disabled. See AR 767-68. Plaintiff now seeks judicial review of the second unfavorable decision. See Dkt. 1.

## II.    LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019) (cleaned up). In this context, "substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 103, 108. "Where evidence is susceptible to more than one

rational interpretation, it is the ALJ's conclusion that must be upheld." Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.    DISCUSSION

Plaintiff argues that even though the Appeals Council's remand order
specifically required the ALJ to reassess Plaintiff's persistent hernias and
resulting limitations, subjective statements, and RFC, the ALJ has again failed
to properly assess the same. See Dkt. 15, Plaintiff's Brief ("Pl.'s Br.") at 4
(referencing AR 853-54).

The parties dispute whether the ALJ properly: (1) determined Plaintiff's
RFC; and (2) evaluated Plaintiff's and his mother's testimony. See Pl.'s Br.;
Dkt. 18, Defendant's Brief ("Def.'s Br.").

### A.    Plaintiff's RFC

A claimant's RFC is the most they can still do despite their physical or
mental limitations. See 20 C.F.R. § 404.1545(a); Laborin v. Berryhill, 867 F.3d
1151, 1153 (9th Cir. 2017). It is the ALJ's responsibility to assess RFC. See 20
C.F.R. § 404.1546(c). In determining a claimant's RFC, an ALJ must assess all
relevant evidence and all of the claimant's medically determinable
impairments. See id. § 404.1545(a); Laborin, 867 F.3d at 1153. The ALJ must
discuss significant and probative medical evidence and, if he or she rejects or
discounts it, explain why. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th
Cir. 2015) (holding federal courts "demand that the agency set forth the
reasoning behind its decisions in a way that allows for meaningful review").

Here, Plaintiff argues that the ALJ failed to properly consider substantial
and relevant medical evidence of record in assessing his RFC. See Pl.'s Br. at
4. The Commissioner argues that the ALJ reasonably determined Plaintiff's
RFC, properly carrying out his duty to synthesize the evidence from multiple
medical sources into an RFC reflective of the valid limitations stemming from
Plaintiff's medical conditions. See Def.'s Br. at 3-6.

Plaintiff primarily argues that the ALJ erred in rejecting the internal medicine consultative examination report of T. Maximous, M.D., who found Plaintiff limited to walking and standing no more than two hours in an eight-hour day. See Pl.'s Br. at 4-5 (citing AR 1079). The Commissioner argues that the ALJ reasonably found that Dr. Maximous' opinion was unpersuasive as it was unsupported and inconsistent with the record, including the record prior to Plaintiff's December 31, 2020 date last insured. See Def.'s Br. at 3-6 (citing AR 764-65).

Plaintiff filed his application after March 27, 2017, the effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence. See 20 C.F.R. § 404.1520c. Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).

The ALJ found Dr. Maximous's opinion "unpersuasive because of its lack of supportability and inconsistency with the evidence of record." AR 764. For supportability, the ALJ found that Dr. Maximous's opinion regarding Plaintiff's standing and walking "is not supported by Dr. Maximous' own examination findings . . . ." Id. For consistency, the ALJ found that this opinion "is also not consistent with the record during the dates of issue." Id. The Court discusses each in turn.

The ALJ found that Dr. Maximous's examination findings undercut portions of his opinion, noting that the findings "revealed normal gait without limp or antalgia, mild tenderness in the lumbar spine, but with reduced range of motion, and normal muscle strength."[5] AR 764. The ALJ did not further

---

[5] The ALJ did not cite to the record for Dr. Maximous' findings. Dr. Maximous' finding regarding Plaintiff's muscle strength, which is listed under

explain why these findings undercut Dr. Maximous's opinion, leaving the Court to guess at the purported inconsistencies between a normal gait, lumbar spine tenderness with reduced range of motion, intact muscle strength, and the duration for which Plaintiff can walk and stand. The ALJ's reasoning is not supported by substantial evidence. See Brown-Hunter, 806 F.3d at 492.

The ALJ also found that Dr. Maximous's opinion was "not consistent with the record during the dates of issue." AR 764-65. The ALJ proceeded to list the following from the record: "[Plaintiff] underwent repair of two hernias with few positive findings and with reports of subjective pain that was addressed with occasional use of Norco and was fully reducible; he had an ataxic gait, but was able to stand without difficulty, with lower back pain, leg numbness and leg pain, range of motion was limited in the cervical and lumbar spine, positive straight leg raise, spasms, and +4/5 left lower extremity strength with degenerative disc disease from C4-T1, and thoracic kyphosis and spondylosis on imaging, but with treatment primarily consisting of pain medication; and acute St elevation myocardial infarction status post stents to the right coronary artery, but testing showed a normal ejection fraction and the claimant denied any chest pain, shortness of breath, palpitations or dizziness and he was referred to pain management and his pain level went down with Norco." Id. (citing AR 343-48, 353, 365, 367-68, 389, 406-08, 425-27, 429-30, 503, 559, 561, 566, 583, 587, 593-602, and 624).

As Dr. Maximous attributed the walking and standing durational limitation to Plaintiff's back pain and coronary artery disease (CAD), not to his hernias, see AR 1079, any purported inconsistences with the record concerning Plaintiff's hernias appear irrelevant. Moreover, the ALJ merely

---

the "Motor" portion of the "Neurological Examination," describe Plaintiff's muscle strength as "intact." See AR 1077.

recited portions of the record without explaining why Dr. Maximous's opinion regarding the duration for which Plaintiff can walk and stand in an eight-hour day is inconsistent with the same. See AR 764-65. Thus, this reason is not supported by substantial evidence. See Brown-Hunter, 806 F.3d at 492.

Nor is the Court persuaded that, under the circumstances, it was proper for the ALJ to reject Dr. Maximous's opinion solely on the ground that it post-dates Plaintiff's date last insured. See Benson v. Kijakazi, No. 20-17010, 2022 WL 613713, at *2 (9th Cir. Mar. 2, 2022) (where the agency ordered an examination after a remand and determined that the evaluation was necessary to assist the ALJ in complying with the remand, "the rejection of the report on the ground that it was long after the date last insured was improper.").

The Commissioner argues that Dr. Maximous's opinion was inconsistent with the assessments of two other doctors: Drs. Vaghaiwalla and Bawa. See Def.'s Br. at 4-5. However, the ALJ did not explicitly cite this as a rationale for rejecting Dr. Maximous's opinion. "Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009).

Beyond critiquing the ALJ's rejection of Dr. Maximous's opinion, Plaintiff argues that the ALJ has yet to properly assess limitations resulting from his hernia. See Pl.'s Br. at 4. In support, Plaintiff generally summarizes the medical evidence. See id. at 6-9. While it is indisputable that the medical evidence reflects Plaintiff's history of hernias, the Court agrees with the Commissioner that Plaintiff has failed to point to any significant evidence showing that his hernias further limited his functioning. While Plaintiff describes Dr. Maximous as having "concluded that Plaintiff was limited to

standing and walking no more than 2 hours out of 8 due to the combination of his lower back and hernia," see Pl.'s Br. at 13, as noted above, Dr. Maximous attributed this limitation to Plaintiff's back pain and CAD, see AR 1079. The Commissioner is correct that Plaintiff cannot establish error by simply advancing a different interpretation of the record. See Burch, 400 F.3d at 679.

In sum, the ALJ, not any medical doctor, properly determines a claimant's RFC as an administrative finding as part of the disability evaluation. See 20 C.F.R. § 404.1546(c). However, when rejecting a medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. See Woods, 32 F.4th at 792. As the ALJ did not provide an explanation supported by substantial evidence to properly reject Dr. Maximous's opinion, which included additional limitations, remand is warranted on this claim of error. See id.

## B.   Subjective Symptom Testimony

Plaintiff argues that the ALJ did not cite a clear and convincing reason justifying a complete rejection of Plaintiff's statements of record, testimony under oath, and Plaintiff's mother's supportive statements. See Pl.'s Br. at 14-21. As discussed below, the Court agrees.

### 1.   Plaintiff's and Plaintiff's Mother's Testimony

In May 2021, Plaintiff and his mother each submitted a function report. See AR 258-65 (Plaintiff's mother's report), 280-88 (Plaintiff's report). In his report, Plaintiff stated that he is unable to sit, kneel, stand, bend, crouch, or lift heavy objects for long periods of time. See AR 280. He stated that he helps get his kids ready for school, and his mother does most of the cooking and helps with his children and pets. See AR 281. He has stated that his sleep is affected due to severe back pain, and he has difficulty with some personal care such that his wife assists him. Id. He states that he needs reminders, such as to take his medicine, and can prepare only simple food while his wife and mother do

most of the housework. See AR 282 ("He does make sandwiches and food you put in micro-wave"). He stated that he does not go out much and his wife and mother do most of the shopping. See AR 283. He stated that he watches television, goes to doctors' appointments, plays games on his phone, and is short tempered while at times cutting everyone out of his life. See AR 284. He stated that he can only walk for ten to fifteen minutes before needing to rest. See AR 285. He stated that he does not handle stress or change well and has isolated himself from everyone including his family. See AR 286.

Plaintiff's mother stated that her son has multiple physical and mental problems including depression; high blood pressure; hernia; pain in his back, feet, and hip; constant pain; anger issues; difficulty focusing on one thing; and sleeplessness. See AR 258. She states that Plaintiff watches television and alienates himself. See AR 259. She states that Plaintiff watches his children while his wife is at work, but since she is there, he will isolate himself. See id. She states that she helps with Plaintiff's children while Plaintiff does his own personal care. See id. She states that Plaintiff will let the pets out. See id. She reported that Plaintiff needs reminders for such things as to take his medicine, only prepares simple food, and is unable to sit or stand very long. See AR 260. She states that the family treats him like a child because of his pain and anger. See id. She states that Plaintiff's wife takes care of all of the bills, and Plaintiff hardly does anything with his sons or wife. See AR 261-62. If they go somewhere, they have to rent a scooter for Plaintiff and he does not go out in public around other people. See AR 262. She states that they remind him of his doctors' appointments, and Plaintiff is depressed most of the time and has difficulty with almost all physical and functional areas. See AR 262-63. She states that Plaintiff's attention span is very short and he is only able to walk about ten to fifteen minutes before needing to rest. See AR 263.

At the first hearing, Plaintiff testified that he can drive, but has difficulty sitting for longer than thirty to forty-five minutes, at which point he has to pull over to stretch because his legs get numb. See AR 44. He testified that his stomach and back problems started after 2003, when he got shot. See AR 48. Plaintiff testified that he has problems finishing things that he starts and will have to sit down if he stands too long. See id. He testified that if he sits too long, he has to stand and stretch, and even activities such as vacuuming affect him for days. See AR 49. He testified that can stand and walk at most fifteen to twenty minutes, due mostly to his leg pain and numbness. See id. ("My legs start burning. They go numb."). He testified that he has difficulty carrying things and does not even help his wife with the groceries. See AR 50. He testified that he goes to pain management, has had steroid shots, and has been on medications for years, though he is scared of becoming addicted. See AR 50-51. Plaintiff also testified that he takes muscle relaxers and anti-depressants. See AR 51. He stated that he gets anxious and angry and had a heart attack in October 2020. See id. He testified that he struggles to keep his blood pressure down and, since his heart attack, gets winded and tires easily. See AR 52. He states that he loses his breath and uses inhalers. See id.

Plaintiff testified that his activities depend on how his back feels. See AR 53. While he might cook breakfast if he feels he is able to stand, his mother does most of the cooking and he no longer does household chores. See id. He testified that if he tried to vacuum, he would be in bed for the next two to three days because he could hardly move. See AR 53-54. He testified that he lays down most of the day to relieve the pressure. See AR 54. He testified that during the day he watches television, takes naps totaling three to four hours, can go to doctors' appointments, but no longer does the grocery shopping which is done primarily by his wife and mother. Id. Plaintiff testified about his poor sleep. See AR 55. Plaintiff testified that his "never ending" pain "never

lets up," and his medications dull it a little bit as does his TENS machine. See AR 56.

At the second hearing, Plaintiff testified that his back and hernia have been limiting him, and he has not been able lose weight due to difficulty in walking. See AR 785. Plaintiff stated that his doctors told him that he needs to lose at least seventy pounds before undergoing another hernia surgery, and his inability to be active makes it difficult to do so. See AR 788. Plaintiff testified that if he walks for fifteen minutes, his legs go numb and he needs to sit down, and it has been like this for a long time. See AR 785. Plaintiff stated that his physical limitations worsened after his October 2020 heart attack, see AR 789, and he could possibly lift up to twenty-five to thirty pounds on a single occasion, but not multiple times in a day and he would be sore the next day. See AR 790. Plaintiff stated that trying to lift that much weight would aggravate his back pain and hernia. See AR 790-91. Plaintiff further stated that his lifting ability is also limited by his cardiac condition and his neck. See AR 792. Plaintiff testified that even if he can lift something weighing twenty-five to thirty pounds, he could move it, but he would not be able to carry it even five steps due to his back and stomach. See id. Plaintiff testified that he can stand or walk about fifteen to twenty minutes at a time, and that this same limitation was true before the end of 2020. See id. Plaintiff testified that he still has ongoing leg pain, burning and numbness "all the time." See id. Additionally, Plaintiff testified that he had arm cancer surgery in 2022, which had been affecting his left arm since before 2020. See AR 787.

### 2.    Relevant Law

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Id. (citation omitted).

The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Brown-Hunter, 806 F.3d at 493 (citation omitted). However, "an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). The clear and convincing "standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Id.

### 3.    Analysis

Here, the ALJ made no allegations of malingering. The ALJ discredited Plaintiff at the second Trevizo step, finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 762.

At the outset, the Court notes that Plaintiff challenges the ALJ's "complete rejection of Plaintiff's statement of record and testimony under oath." Pl.'s Br. at 21. To ensure that "appellate review is meaningful," the ALJ is required to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted) (alterations in original); see also Brown-

Hunter, 806 F.3d at 494-94 (finding error where "the ALJ stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged'").

Here, much of the ALJ's written decision does not meet the above-mentioned requirements. The ALJ briefly summarized some of Plaintiff's testimony before launching into an overview of Plaintiff's medical history. See AR 761-64. Along the way, the ALJ noted that Plaintiff "received mostly routine, and non-emergency treatment." AR 762.[6] The ALJ did not, however, specifically identify any of Plaintiff's testimony that he found not to be credible. The ALJ's failure to identify which testimony he found not credible and explain which evidence contradicted that testimony fell short of the ALJ's responsibility. See Brown-Hunter, 806 F.3d at 494-95. Moreover, as discussed below, the ALJ's reasons for rejecting Plaintiff's testimony do not meet the "clear and convincing" standard.

        a.     Daily Activities

As the bulk of Plaintiff's argument focuses on the ALJ's discussion of Plaintiff's daily activities, the Court begins there.

The ALJ rejected Plaintiff's testimony based on his daily activities. See AR 761-62. "Engaging in daily activities that are incompatible with the

---

[6] Plaintiff did not directly challenge the ALJ's use of "routine and non-emergency" treatment. To the extent the ALJ relied on this as a reason to discredit Plaintiff's testimony, there is limited support in the record for this conclusion. For example, in 2020 alone, Plaintiff underwent hernia repair surgery and visited the emergency room multiple times, including in October when he was admitted to the hospital, diagnosed with ST elevation (STEMI) myocardial infarction, and underwent a left heart catheterization with right coronary artery intervention and placement of stents. See AR 344-45, 498-503, 590-91.

severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Daily activities may also be "grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Id. (citation and internal quotation marks omitted). "The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation omitted) (cleaned up).

The ALJ noted that Plaintiff "admitted activities of daily living including he lives with family, gets the children ready for school, goes to the park, prepares meals, takes care of his children, has dogs and a turtle he cares for, takes out the trash, picks up dog poop, drives, goes out alone, shops in stores and by phone, can count change, watch television, play games on his phone, and socialize in person, by phone and text, and video chat." AR 761-62 (citing AR 279-88). The Court agrees with Plaintiff that the ALJ mischaracterizes some of Plaintiff's activities.

For instance, in his function report, Plaintiff reported that he takes out the trash and picks up after the dogs, but "[i]t takes me a while just walking out the sidewalk. By the time I come back in I have so much pain in my back I have to sit down." AR 282. Plaintiff also reported that his wife and mother do the majority of yard and housework because of his back pain. See id. For meals, Plaintiff testified at the first hearing that he cooks breakfast only if he feels like he can stand, otherwise, his mother cooks for him and his sons while his wife works. See AR 53. Plaintiff reported that he will "try to prepare dinner, but most of the time my mother helps," and he makes "only sandwiches" and "food you put in micro-wave." AR 281-82. For socializing, Plaintiff reported sitting at home and watching movies everyday with his

14

family. See AR 284. Overall, Plaintiff repeatedly emphasized that his daily activities depend on his pain level, and he experiences "never ending" back pain "[a]ll day long." AR 56, 281-84.

Plaintiff's statements and the other record evidence about his daily activities do not contradict his statements regarding his limitations. Plaintiff consistently testified that he engages in activities only if his pain allows and/or that he suffers in pain for some time afterward. The ALJ also failed to demonstrate that Plaintiff's limited activities equate to the ability to consistently perform and persist at full time light work activity as contemplated by the ALJ. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).

In sum, this was not a clear and convincing reason for the ALJ to summarily reject Plaintiff's testimony. Additionally, as the ALJ partially rejected at Plaintiff's mother's statements on account of this proffered rationale, see AR 762 (noting that her statements are "generally consistent" with the claimant's admitted ability to perform several activities of daily life, which activities "reflect a significant functional capacity"), this was insufficient rationale to reject Plaintiff's mother's statements for the same reasons espoused above.

### b.    Inconsistent with Medical Evidence

The ALJ also found that Plaintiff's statements were "inconsistent" because his allegations "are greater than expected in light of the objective evidence of record." AR 761. The ALJ found that "[e]ven if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that

15

degree of limitation to the claimant's medical condition, in view of the relatively benign medical evidence." Id. Plaintiff contends, without much more, "that his subjective statements of record and testimony under oath are consistently and credibly supported by the medical evidence of record." Pl.'s Br. at 21.

An ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 681. However, "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498.

Here, the ALJ provided an overview of Plaintiff's medical history. See AR 762-64. But "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) (citation omitted). The Ninth Circuit's decision in Lambert is instructive. There, after some introductory boilerplate, the ALJ provided four high-level reasons as to why claimant's allegations were "less than fully consistent with the evidence." Id. at 1277. The Ninth Circuit concluded that the ALJ's "brief discussion" was insufficient: "Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits. But our precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment." Id. (internal citation and citation omitted); see also Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the reviewing court may not "take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and

16

comb the administrative record to find specific conflicts."). Likewise here, the ALJ's findings do not meet the specificity requirements.

While the Commissioner argues that the medical opinion evidence indicated Plaintiff was not as limited as alleged, see Def.'s Br. at 7 (referencing the opinions of Drs. Vaghaiwalla and Bawa, and state agency psychologist Larry Kravitz, Psy. D), the ALJ did not reference specific medical opinions in rejecting Plaintiff's testimony, see AR 762-64. Although the inconsistencies identified by the Commissioner "could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the Court is "constrained to review the reasons the ALJ asserts." Brown-Hunter, 806 F.3d at 494 (citation omitted) (cleaned up).

c.      Failure to Follow Treatment

The Commissioner argues that the ALJ reasonably discounted Plaintiff's testimony due to his failure to follow recommended medical advice to stop smoking and lose weight in order to have another hernia surgery. See Def.'s Br. at 8 (citing AR 763). Plaintiff did not respond to this argument. See Dkt. 19 (Plaintiff's Statement of No Reply).

An ALJ may rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in weighing a claimant's credibility. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by regulation. At the January 2025 hearing, the ALJ asked Plaintiff about his efforts to lose weight and stop smoking. See AR 785-86. After Plaintiff testified that ailments including his leg numbness made exercise difficult, the ALJ asked about dieting. See id. Plaintiff testified that he tried dieting, but "failed miserably." AR 786. As to his

17

smoking, Plaintiff testified that he has "been really trying to limit it," "it's a challenge," and, at that time, Plaintiff was back up to ten cigarettes. Id.[7]

While Plaintiff's failure to follow the recommended medical advice to stop smoking and lose weight to have another hernia surgery may be a ground to reject Plaintiff's testimony regarding his hernias, the ALJ erred to the extent he relied on this rationale to reject all of Plaintiff's testimony.

> d.   Improvement With Treatment

The Commissioner highlights how the ALJ noted that Plaintiff's condition improved with treatment. See Def.'s Br. at 8-9 (citing AR 757-58, 764). Plaintiff did not reply. See Dkt. 19. "[E]vidence of medical treatment successfully relieving a claimant's symptoms can undermine a claim of disability." See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (citation omitted); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

As to Plaintiff's mental limitations, this rationale may be valid, as Plaintiff reported improvement after he was started on medication. See AR 757-58 (citing AR 612, 614). As to Plaintiff's physical limitations, Plaintiff's condition did not reportedly improve, albeit perhaps temporarily, until after the relevant period. See AR 764 (citing AR 561 [notes from a December 9, 2020 medical visit include: "Patient stated that he didn't notice any changes in his pain since he started taking Tizanidine"], 566 [notes from a January 8, 2021 follow-up visit include: "Norco helps to bring his pain level down to

---

[7] The Ninth Circuit has acknowledged the possibility that a claimant may be "so addicted to cigarettes that [they] continued smoking even in the fact of debilitating [claimed severe ailments]." Bray, 554 F.3d at 1227.

about 3/10 for about 3-4 hours w/ light activity"]). But see Pl.'s Br. at 10-13 (discussing Plaintiff's subsequent medical history which includes complaints of ongoing pain and decreased medication efficacy, as well as additional procedures including spinal injections and surgeries). This rationale is not supported by substantial evidence.

### 4. Conclusion

In sum, the ALJ did not offer adequate reasons supported by substantial evidence for discounting Plaintiff's and Plaintiff's mother's testimony. Nor did the ALJ sufficiently identify which portions of testimony he found not credible. Remand is accordingly warranted on this issue.

## IV. REMAND IS WARRANTED

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the district court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, while the Court is sensitive to the timeline of these proceedings, the Court finds it appropriate to reverse and remand.

///

///

///

19

## V.   CONCLUSION

This action is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: January 20, 2026

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge